Good morning, ladies and gentlemen. This is the time for an on-bank re-hearing in the case of Perez-Enriquez v. Gonzales. We note that this is the first time that we have had 15 judges sitting in a limited on-bank court, and there appear to be more judges on the bench than there are people in the audience. I understand that all counsel who intend to present argument are ready to go, and so counsel for the appellant may proceed. Good morning, Your Honors. My name is Robert Powell, appearing on behalf of the petitioner, Mr. Perez-Enriquez. I'm here with my co-counsel, Robert Gibbs. I would like to reserve about 10 minutes of time by way of rebuttal. First of all, I'd like to explain, make sure that the court understands what is at stake in this case. For Mr. Perez and for thousands of other agricultural workers who went through that legalization program, Mr. Perez became a lawful permanent resident on December 1, 1990. That was done in accordance with the law that existed at that time. He adjusted and became a permanent resident. He was given a green card and told that he can live permanently in the United States. Now, more than 10 years later, the government is telling him, well, that really didn't count. We're taking away, we're treating you as if you never lawfully became a permanent resident of the United States. And that means he's ineligible for any sort of humanitarian waiver or consideration based on his equities, his family, and all of the ties that have developed in the last 10, more than 10 years. And that's because the provisions of the SAW statute itself that provide for waivers are no longer applicable to him? Well, they were not. Those SAW provisions relating to excludability did not apply at the time that he adjusted and became a permanent resident. I'm not talking about excludability. I'm talking about the waivers that are contained within the SAW statute, the humanitarian waivers. They seem to apply only at the time of temporary adjusted status and in the interim period of his revocation, but not after that. Is that his problem? Well, partly. When at that – when Mr. Perez adjusted and became a permanent resident, he didn't – he actually – the waivers didn't apply because he didn't need those waivers at that time. The grounds of inadmissibility simply did not – He can't now claim them. I'm sorry? He can't now claim those waivers. Right. In other words, now, after the fact, the Immigration Service is going back and saying, well, we'll apply these grounds of inadmissibility to you now, but you're not eligible for the waiver. The relevant – the relevant term, I think, is – that this Court is interpreting is whether the person was, quote, inadmissible at the time of adjustment of status. Don't we first have to decide whether or not there is an adjustment of status on each date? The – that – well, again, the term is inadmissibility at the time of adjustment of status. Well, those – Forget about inadmissibility for the moment and whether or not it applies retroactively, even though it was automatic, et cetera, et cetera. Why can't we conclude that the adjustment of status occurs at each of the two dates? Well, there are – there are several different provisions in the immigration laws that talk about adjustment of status. Some of these – for example, Section 245, if you're married to a U.S. citizen, Adjustment of Status under 245, you clearly have to go through that admissibility turnstile, as it were. You look at whether the grounds of inadmissibility apply. Well, you keep wanting to answer my question in terms of inadmissibility. I want to – I'm trying to confine my question to simply, is there an adjustment of status two years later when the temporary residency is converted to a permanent residency? The statute talks in terms of adjustment to permanent resident status. I don't think it actually uses the term, quote, adjustment of status. That term, adjustment of status, if you look at that as a term of art, that term, adjustment of status, is used, as far as I know, only in Section 245, not in the SAW program. The word adjustment, in your argument, must mean something different. It doesn't necessarily mean adjustment of status? So the – Is that right? The – when you adjust under that SAW program, you adjust from temporary status to permanent status. Thank you, sir. Well, there are two possibilities, are there not? You could be going through an adjustment of status at the time you get your temporary, and you might also, which I think is what the question refers to, also or in addition to or either have an adjustment of status on the two-year anniversary when you are entitled, all other things being equal, to permanent status. Correct. The statute talks about adjusting to permanent resident status. That's correct. Well, let me go back to that statutory language just so we're talking the same thing. I think the confusion is that in the first part of the SAW statute, when it talks about admitted for temporary residence, it uses the words shall adjust the status of an alien, and then it goes on to temporary residence. Then you move down to the section that talks about permanent residence, and it uses these words again. It says shall adjust the status of any alien, and then it goes on to say admitted for permanent residence. So is there one adjustment of status and that's all, or are there two? And if there's two, you benchmark each one of those against the other statutes. Right. There are, you know, again, in the immigration laws, there are several different provisions that talk about adjustment of status to permanent resident status. Some of those I'm talking only about 1160 right now just so we don't have to get into too many laws. Okay. So, yeah, there are two adjustments in that process. There's an adjustment from non-status to temporary status, and then there's a later adjustment from temporary status to permanent status. May I ask a question? Could I just make one observation first? I got ahead of myself earlier. Judge Wardlaw is on the phone with us. Thank you. This is Judge Wardlaw. Yes, this is Judge Wardlaw. That's why there are only 14 of us up here instead of 50. I left you room. My question is the IJ did not really address this question in its oral decision in this case, and I'm wondering whether it's appropriate for us to be answering the question or whether we should remand it to the BIA. Well, our view is that the court, of course, can interpret the statute. It's the court's responsibility to do that. Under the ordinary and traditional tools of statutory interpretation, we submit that the answer in this case is clear, that Mr. Perez Enriquez is not deportable for having been inadmissible at the time of adjustment of status. That's a question of law. Which adjustment of status? You've conceded that there are two possible ways. Which one are we talking? We're talking about the adjustment from temporary to permanent status. Because the grounds of inadmissibility do not apply at that time, we can't later come back and say, oh, we're going to deport you now because you were inadmissible at that time. But if we're talking about the date of permanent status, in other words the second of the two possibilities, don't we have a chance at that point to analyze whether or not as of that moment was there something that would have rendered this alien inadmissible? No, that's not really proper to do that. The ground of that ground of inadmissibility, it's like a turnstile that somebody is supposed to go through to get into a park. And in some cases that applies. In some cases it's not. I would have a two-step process if the second part of the process means nothing. No, well, it's very significant. Because you're basically, I think your basic argument is it's automatic. The first one, you know, once you get the temporary, the second one is automatic, so the second one really isn't an adjustment of status, right? No, that's not exactly correct. The question is when those grounds of inadmissibility apply. When a person, again, in several different contexts changes from one status to another status, sometimes those grounds of inadmissibility apply and sometimes they don't. Sometimes you have to go through that inadmissibility turnstile and sometimes you don't. Now, let me ask you. The BIA has always understood that to be the case. Is that not correct? I'm sorry? The BIA has always understood that to be the case. I'm just not talking about what 1227A means, because I'm not sure there's any interpretation of that statute anywhere. But in terms of whether admissibility criteria apply at the second stage, the BIA has said both in an early regulation and in a myriad of cases that it does not be the disability determination question does not apply at the second stage. The purpose of the two years essentially is to give them two years to revoke the temporary status if they find out that he wasn't eligible in the first place. Or if he does something that makes him ineligible during that period, but then there's a cutoff. That's correct. And that determination is discretionary. That's very important. That determination as to whether or not we should block him or her from getting permanent status is a discretionary determination. There's – which may well have happened in this case. Mr. Perry. Was the alien deportable under a different section? He may well be deportable for, for example, for having been – For this act, I mean. For this same act, yes, correct. So the only question is which section he is deported under? That's – that's correct. All right. What difference does it make if – I understand that you think that the statute doesn't apply. But the statute would appear to permit the change in status even if he was inadmissible. Yes. So in that case, he lawfully received a permanent change of status. After this, he's deportable under one statute or another. Deportable because he was convicted of a drug offense. Because of his act. He's deportable under one section or another. Therefore, the dispute must really be about whether Section 212C applies. Well, I think the – an important question is whether he's deportable under A1A, the inadmissibility, or whether he's deportable for the underlying act. Why is that important? And that's important. Well, if you look at what happened in this particular case, initially he was charged as being deportable for the underlying act. And he went to – Let me stop you right there, though, now, if – to get back to Judge Reinhart's question. That's the one you're conceding, that if all of – all of – if you win your petition, he still may be subject to removal under that section? Correct. Okay. He may be under – deportable for the underlying – for the drug offense. But does it make a difference if 212C relief, other than whether 212C relief applies? Well, of course, 212C relief is extremely important in this case. I understand that. My question is, is there any other reason that it makes a difference other than whether 212C applies? Whether he's deportable under A1A or under – well, it's also important because if he's deportable under A1A, in effect, that's a determination that he never properly got legal status. If you look at – So why is it? Well, look at – The strategy says that if he was inadmissible at the time he received the – the change in status, he's deportable. Now, in fact, he was inadmissible, and he was granted change of status under the law, which appears clearly to permit the change in status, even if he's inadmissible. Correct. Okay. So – so what? So he's deportable because he was inadmissible at the time of change of status. No. But why does that require a 212C relief? Okay. So – Why do the two stand and fall together? I'm sorry? Why do the two stand or fall together? Yeah. Because – well, again, look at what happened in this particular case, which is supported by other case law. He was initially charged as being deportable for the drug offense, and then after – and then – then when he said, I want to apply for this relief, the 212C waiver, the Immigration Service changed its view through that allegation. I mean, it doesn't matter what the Immigration Service did. The question is, why is he not eligible for 212C relief? They may have said he isn't, but why isn't he? If he's deportable – if this Court says he's deportable under A1A. Yes. Okay. Historically, what that – what that means – Historically, what is it that prevents the grant of 212C relief? Well, Monet, for example. This Court decided that – Monet, why does that apply? That's when you're fraudulent in obtaining your – your relief. You're fraudulent in obtaining a change in permanent status. Here, he did nothing wrong. He was granted – lawfully granted permanent status under the law. So Monet does not apply. What is the problem? Well, that's our argument, is that – Your problem is that the IMS did not give him 212C relief under what you believe is a mistaken view of the law, because he was entitled to 212C relief. Correct. Under either section. Under either section. I'm not sure what – No, no matter why he was deported, what – whichever section. Yeah. I mean, if this – He was entitled to 212C relief as long as he had acted lawfully. If this Court wants to hold that he's deportable under A1A and he's also eligible for 212 – he's also – even though he's deportable under A1A, he still is treated as a permanent resident and is eligible for 212C relief, I suppose, you know, that – that's – And why that's not correct? Well, it's inconsistent with what the Board of Immigration Appeals has said. So, see, if we're going to be bound by what the Board of Immigration Appeals has said, why are you here? And – and with – So your position is very inconsistent with what the Board has said. Yes. Well, I think it's inconsistent with Monet as well. I mean, the Monet case in which this Court held – and I understand that that was a fraud case, but basically the reasoning was because this person is deportable under A1A, it didn't matter whether he committed fraud or not. He didn't lawfully – the Court says he did not lawfully get that – No, he did not get that. I'm sorry. I'm sorry? The Court has held over and over again that Monet does not apply unless there is fraud. If the person simply sits there and doesn't – he has no obligation to report a crime and doesn't do it and automatically adjusts, then Monet does not apply because he – he is lawfully a permanent resident – resident, so on. Yeah. Maybe I am missing – misunderstanding something here, but as I understand it, what Monet is holding is that a person who is inadmissible at the time of adjustment of status, if the grounds of inadmissibility apply, does not lawfully – whether there's fraud or not fraud, there have been cases in which there's no fraud at all involved and the person – the immigration officer made a mistake. The person was completely truthful. The immigration officer makes a mistake and grants adjustment of status. Well, under A1A, you go back and you can say you were – even though there was no fraud, you were inadmissible at the time and, therefore, you got your status by a mistake and, therefore, we're going to treat you as if you're not. No mistake, he was granted his status properly under the law. The law granted him permanent change even though he was inadmissible. Right. The Attorney General had the option of preventing him from getting the changing status, chose not to. Therefore, he was lawfully granted – no mistake, no fraud, nothing wrong, a lawful change. Nevertheless, he's deportable under either one or two services. Let me try to explain what our concern is in this way, if I can. That's essentially a latches argument that since the Attorney General didn't act at the time of permanent residence that he's forever barred. As I understand the facts here, this didn't come to light until later. Is that correct? That's not necessarily correct. It may well have been – it was a discretionary determination. It may well be that an immigration officer encountered him while he was in jail, made a discretionary determination. We'll let this person go. It's not a serious offense. We'll let him go and adjust his status. That's clearly consistent with the law and may well have happened. You resized earlier in your argument that the government waited ten years. Correct. So we have a new Attorney General and now this new Attorney General says, well, you know, we don't like the fact that you got your status back then and so we're going to – even though that was completely lawful, we're going to change our mind and now treat you as if you never got legal status in the first place. That's why I come back to my original question. You – is it sort of roughly equivalent to re-strudicata or latches or once the time for the adjustment at the permanent station occurs, the government can no longer act? Is that what you're saying? Well, the government can no longer come back and say we're going to treat you as if you never got permanent resident status. I thought your argument was based on a statutory interpretation. I'm sorry? I thought your argument was based on statutory interpretation. Yes, it is. In other words, the statute says that it cuts off a two-year. It's not a loose latches thing. It just adds – it's an orderly statute that says there's two years in which to decide whether to revoke the temporary resident status and not allow him to proceed with permanent status. If he doesn't act in those two years, then he proceeds to automatically become a permanent resident. That doesn't mean he's not deportable. It just means if he's deportable, he's deportable as a permanent resident. At least that's your position. It doesn't mean he's not deportable. It means he's not deportable under A1A. The effect of A1A is to go back and say this person got his status by fraud or mistake, and therefore we're going to treat him as if he was never a permanent resident. He can be deported for the drug offense, a different ground of deportation. But what you can't do is go back and say this person is deportable because he was inadmissible at the time of entry of adjustment of status, and therefore we're going to treat him as if he never obtained permanent resident status. That's exactly what happened in the Flores-Munoz case. He had the idea that therefore we're going to treat him. Yes, let's assume he's deportable. He's deportable because at the time he was lawfully granted permanent resident status. He also was a mistake of inadmissibility. Let's assume that. So where do you go beyond that? I mean, he's deportable anyway. So the fact that you deport him twice, fine. But there's no – if he's deportable for that matter, or he's deportable because he had that status at the time he was lawfully granted, it doesn't really matter as far as being deportable. It can only matter in terms of whether he's eligible for other relief. So here's what I'm concerned about with respect to A1A ground of deportation. If we say that A1A applies to him, take the situation where a person has not been convicted of a criminal offense, okay, so he's not deportable from the underlying offense, and he adjusts status, even though the grounds of inadmissibility do not apply to him, then according to the government's view, the next day, even though this person perfectly lawfully adjusts status and becomes a permanent resident, the grounds of inadmissibility do not apply. According to that reasoning, the next day we can come back and say, well, we're going to change our mind and take that status away from you because you were inadmissible at the time of adjustment of status. Even though the grounds do not apply, we're still going to say that you're deportable. Even though you didn't do anything wrong, we're going to take that away. And in your hypothetical, why was he inadmissible at the outset? Well, for example, and let's talk about – in this Saw Agricultural case, Mr. Perez's next-door neighbor, just like him, was a Saw, got approved, never committed a crime. He adjusts status and becomes a permanent resident. Well, when he adjusted, he was inadmissible because he did not have a labor certification. Section 212a5, for example, requires you to have a labor certification in order to adjust status. Well, according to that reasoning, the next day we can come back and say, oh, even though you don't have him committed a crime or anything, you were inadmissible because you didn't have that labor certification, and therefore you're deportable. But that – There are people who would be deportable under A1A and nothing else. There may – yes, that's correct. There may well be people who are deportable under A1A but nothing else. And that's why those grounds – that A1A provision, that ground of inadmissibility just cannot be applied when a person adjusts status if the grounds of inadmissibility do not apply when he adjusts status. You didn't cite to any of the legislative history behind the Saw provisions. But wasn't the reason that Congress passed it the recognition of the fact that a number of agricultural workers were here in the United States illegally that either entered without inspection, they didn't have the labor permit, and that, in essence, it was an act, if you will, of legislative grace to allow them to adjust because it was important to have a ready supply of farm workers? And if that's true, then why should we extend that act of grace to include people who have always been ineligible, those who commit serious crimes or drug trafficking offenses? Well, this – it just applied the law the way it's written. That person – even though that person committed and was inadmissible, the law does not require that that person be admissible when he gets permanent resident status. There were other grounds. But Congress – I guess my question is why can't Congress distinguish between different groups of aliens that were perfectly willing to look the other way if they came across the Rio Grande without inspection, but we're not going to look the other way if they commit serious crimes while they're here? And we're not going to give them a safe harbor under Saw for that reason. Congress did that in this particular case. And it said if you commit – well, there are certain types of crimes, very serious ones. If you commit them, then you're deportable. You're not eligible for the program. But there are other crimes that are grounds of inadmissibility that are less serious. And we give the Attorney General discretion. If the Attorney General decides that this is a serious offense, we can block you from getting permanent resident status. But the statute, Congress clearly says you do not have to meet those grounds of inadmissibility when you become – you can lawfully become a permanent resident even though you're inadmissible. Well, why wouldn't then you just make everyone a lawful permanent resident right out the gate? Why is there a two-step process? That's – Yeah. You know, they would be capable – I mean, they could have let everyone be a lawful permanent resident right out the gate, right? They could have done that. That's right. They have that authority. That's right. Yeah. The legislative history underlying that is very unclear. There's not any legislative history that I'm aware of. But apparently there are two things that Congress was doing, delaying for whatever reason the right of a SAW applicant, an agricultural worker, to apply for family members. Once you become a permanent resident, you can apply for family members. They're a two-year wait period. And also the time that you accrue for citizenship. You have a five-year wait, and that doesn't start for whatever reason Congress, in effect, made it a seven-year period because you have to wait for two years before you become a permanent resident. And the reason is that the Attorney General had two years to continue to investigate to find out whether you were, in fact, inadmissible in the first place. And also if you did something that was inadmissible in the meanwhile. So essentially it was a two-year investigatory period. A two-year, yeah, a two-year wait period. And the Attorney General had the discretion to pick out the people with most serious offenses. But given that conclusion, counsel, where did the panel go wrong in this case? I think the panel went wrong by applying those grounds of inadmissibility. So, in effect, saying so the person goes, you know, does not have to go through this inadmissibility turnstile at the time that he becomes a permanent resident. The panel, in effect, is saying, well, right now, 10 years later, we're going to make you retroactively go back and vet you for those admissibility criteria when they really did not apply when you first came through and when you came through in the first place. And that's what's fundamentally unfair and wrong. You know, that turnstile is used to block people from getting status that, you know, they shouldn't get. And it's not really correct to say deportable under A1A now retroactively when the person was escorted around, didn't have to go through that turnstile the first time. Are you basically saying in English that you can only be determined to be inadmissible on one occasion? And in this case, it's at the outset of your adjustment to temporary status? Well, I guess what I'm saying is that you don't, A1A does not apply if when you adjusted your status that those grounds of inadmissibility did not apply. Now, you may have to go through that turnstile several different times, right? And so in each one, you know, there may be a question about whether you're deportable because you were inadmissible at that time. But where you don't have to go through that turnstile, then you can come back. Aren't you really saying that this is a peculiar statute and that under the terms of this statute, inadmissibility or admissibility is determined when the alien comes into the country and it's not determined a second time under this program when the status is adjusted? That's unlike some of the other adjustments of status. Isn't that your argument on this? Yes. And if you're taking a look at Jimenez, for example, Jimenez Lopez, the difference in that case, it was a BIA case, but the difference is he left the country. And he came back in and he was paroled. He was not admitted. And they said, look, you weren't admitted. So we stopped you right there. And then when you, by operation of law, because of this peculiar statute that operates by law and not by executive decision, you can't use that to say your status has been adjusted and you can't, we can still say you're inadmissible because we never let you inspect it. Your client came in and he stayed here. So you say his admissibility was determined once. It doesn't get determined again under this peculiar statute. However, you charged him right to begin with. You can still find him deportable. Isn't that your statutory argument? Yes. I think that's a good way to express it. Thank you very much. I would like to reserve a couple of minutes. The secondary question, that is, what happens on 212C relief regardless of how you do it? And that's Judge Reinhart's question, right? Yes. Okay. I would like to reserve a couple of minutes. But I do want to just say one point about Jimenez-Lopez that's, I think, very important for the Court to understand is that in Jimenez-Lopez, the Board of Immigration Appeals recognized, even though this person is seeking admission, recognized, said that he is a permanent resident. He automatically adjusted. Even though those grounds of inadmissibility did not apply, he lawfully became a permanent resident. Even though he's in exclusion proceedings, we will still treat him as a permanent resident. That's the same thing that should happen here. Even though he's deportable for some other offense, he still needs to be treated as a permanent resident and eligible for Section 212C relief. Thank you. May it please the Court. My name is Francis W. Fraser. I'm here on behalf of the Respondent, the Attorney General. If I may, I'd like to begin by responding to the first statement that Counsel made, which is that, because actually I think it goes to the heart of this case. He stated that the agency is going back, that it's reaching back in this case. Well, it isn't. It happens all the time that an individual has committed a crime which doesn't come to the agency's attention for a long time, sometimes years. That's exactly what happened here. The crime was committed in 1989. It didn't come to the agency's attention for years. But for that understanding, you can't do that. You can't reach back. The question is, in what status are you treating him when you reach back? Well, the reaching back is relevant because that explains exactly why Congress created a two-step process in the SAW statute. An individual could apply for temporary resident status while he's overseas. The agency would have no opportunity whatsoever to do an investigation. Exactly. Exactly. That's right. That's why they have a two-year process. But at the end of the two years, what? Well, at the end of the two years, that leads to another point. The word automatic has been used in this proceeding, and I think it's a bit of a misnomer. The process is automatic only in the sense that if it happens at all, it happens according to a fixed schedule. But that doesn't mean that there are no things can't happen to stop the process. And they're listed right here in the statute. And they're listed right there in the statute. And if you don't do one of these, if one of these things in the statute doesn't happen, then it's automatic. It is automatic. And what happened here isn't listed in the statute. That is to say, the Attorney General is required to act before the two years expire. He's not required to act. Well, it's discretionary. It's true that it's discretionary. He may act. He may act at different times. I'm simply reading from the statute. Termination of temporary residence. During the period of temporary residence status granted under paragraph 1, the AG may terminate such status only upon ducted out of law. Well, he may do it. But if he doesn't do it, it's then after the expiration of the period, it's converted, at which point you can still deport or remove. It's just you're now deporting somebody who's been admitted as an LPR. Well, Judge Fletcher, I would respectfully suggest that it's actually Part B that's more relevant here. Part B of that same provision. I intended to include that, but he has to do it during that two-year period. That's right. He has to do it. But what that means is that it's not an automatic process. Well, I understand that. And that's the only point of that. But just to make sure we're on the same page, if during this two-year period the Attorney General chooses to act under any of these provisions, he may do so. He may do so. And he may prevent the adjustment of status to lawful permanent residence. Correct. On the other hand, if he does not act during that two-year period, the status is adjusted. The issue goes to whether admissibility must be maintained. This demonstrates that. That's what the BIA said over and over and over again that it doesn't have to be. I understand you're saying in a different context. Correct. But nonetheless, they have said over and over again that the failure to act means that the person does become a lawful permanent resident and is eligible for 212C and cancellation of removal because he does become a lawful permanent resident because the admissibility factors don't apply when this automatic situation comes in. Is that not what they've said over and over again? In cases in which the issue is admissibility, here the issue is, has there been an adjustment of status? Well, I understand. Not whether there's been. So then the question ultimately is the question that Judge Reinhart's been asking, which is, do you agree, then, that whichever provision he is deportable under, even if he is deportable under the provision that you're deporting him under, he is still eligible for 212C relief under all the cases where the BIA has said that? I believe he would not be eligible for 212C relief. Why not? Because, well, 237A1A is a ground for which a 212C relief is not available. Now, whether he might be eligible for... Why is that? Would he not be a lawful permanent resident at that point? Well, he would be a lawful permanent resident, but there are certain crimes for which you cannot receive 212C relief. He would be a lawful permanent resident. And many of the – in several of the unpublished decisions that you're referring to, Your Honor, the question was, was the individual a lawful permanent resident? Right. Here the question is, has there been an adjustment of status since February 2? Does the crime make him not eligible for 212C relief? I'm sorry? Do you think the crime he committed makes him ineligible? No one has suggested that. Well, first of all, I really think it's – 212C is not an issue in this case. But still, I guess the question, would he be eligible for 212C relief because it's a lawful... He would be. If he were a lawful permanent resident, he would be. But under the statute under which he's charged, I believe he would not be eligible for 212C. Because of the particular drug offense? I'm sorry? Because of the drug offense? Because it's 237A1A. Well, let me ask you this. What's 237? That's the statute, the grounds of deportation that he is charged with. Let me take my turn. That's the key statute in this case. You mean that even under the other deportation, everyone agrees he can be deported for the offense? Yes. Yes. If it were under that other statute, would he be ineligible for 212C relief? He could have been charged under other statutes for which he might be eligible for 212C. That's correct. No, no. I mean, the deportation provision. Yes. Not the offense he committed. He could have deported him under one of two provisions. He was originally charged with different provisions. Right. Under that, would he have been eligible for 212C? Under the original charges, I believe he might have been, yes. And so that's what this is all about, I mean, in a sense, is that his eligibility for relief. If he's deportable rather than inadmissible, he could apply for, under your view, 212C relief, right? I'm using the original. 212C has unbelievable legs. It was repealed 10 years ago, and we're still litigating it. No, but that's your position. It applies in both deportation and exclusion grounds. It's been extended to grounds of deportability as well. I don't understand your answer to that. Would the adoption of the date of adjustment to legal permanent status as the critical stage for purposes of Section 212A1A bar all those who receive criminal convictions before that date seeking any discretionary relief? If we – if that second date is the date of adjustment, are those individuals barred for all discretionary relief? In other words, all individuals who fall in precisely the circumstances of this case? Yes. Under this statute, yes, they would be. I'm putting 240 as well. Cancellation. Well, yes, because – well, we – well, I don't know the answer. I'd have to think about that. That's what the court decided before a spewness, right? The second time around, that's what they decided. The second time around, that's what they decided, because there is a definition. Actually, the definition, it's at 1101A20. The term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States, et cetera, such status not having changed. Lawfully – was Mr. Perez-Enriquez lawfully accorded lawful permanent residence status? Why not? Because he didn't maintain his admissibility under the Saw statute. But doesn't the statute say that if you do something in that 10-year period, the attorney general can act and prevent you from being given lawful permanent residence status? Or if he doesn't act, then he gets lawful permanent residence status, even though he's inadmissible. Now, the statute could have said, if you commit any of these acts, you then may not receive lawful permanent status. Instead, they say, if you commit these acts, the attorney general may prevent you from getting it, or may not. Or may not. Yeah. But it means you have to maintain your status. But we don't need the attorney general at all. Well, the statute – If it's automatic that you lost your opportunity to get permanent status, you wouldn't need the attorney general to act. The statute says he can act. He can act. So it's not automatic. But he doesn't have to deprive you of it if he doesn't want to. Or if he's not aware of it, Your Honor. Or if he's not aware of it. If it doesn't come to his attention. So what do you need the attorney general for if, in your view, you automatically force him to write permanent status? That's why I question the use of the word automatic. It's not automatic. In your view, it's automatic. If you lose your right to permanent residence status, if you commit one of these acts and are inadmissible between that 2-year period, Do they lose your right automatically? Because you have not maintained your status. Correct. But the statute says that the attorney general can take it away from you. Why would it say that if you lost it automatically? Well, I'm making the argument kind of in the other direction. The attorney general's authority demonstrates that it's not an automatic – that you're not vested at the time of adjustment. Can I ask a question on a hypothetical question? DOJ sits there and is told by its border agents that we have led a lot of these folks across. We have strong belief that some of these folks have these drug problems. The attorney general decides we don't have the resources to apply to investigate those and decides not to do any investigation. Hasn't made an individualized determination. Makes a policy determination. It has not the resources. Under that circumstance, if that had applied to Mr. Perez and Reekins, would the attorney general have exercised his or her discretion under your view of the statute? And therefore, having failed to exercise his or her discretion, Mr. Perez and Reekins cannot be said to have lost his rights under the argument we now make. Is Your Honor positing a situation where a crime is committed before the first adjustment? No. I'm positing these facts. You said if the attorney general exercises his or her discretion. All right. The Justice Department exercises discretion where to put its resources. Correct. But it doesn't make an individualized determination. Correct. So it has elected affirmatively the record would show that they were alerted to the problem at the San Diego border. And they said we don't have the resources. Okay. We're not going to follow up on that. Is that the exercise of discretion that the statute contemplates? No, I don't think it. I don't know. The regulations don't amplify what determination exercise or non-exercise or determination authority means or what the limits on it. So I'm not really sure how to respond to that. How would an individual know whether or not the attorney general has exercised discretion not to pursue his individual case? The individual case. I suppose it was specific to this fellow. The tip was that this guy probably had committed a drug act during the two-year interval and it was an election specifically with respect to him not to investigate further. Is that an exercise of discretion? I'm not sure how to answer that, Your Honor. To go back to your earlier question, I suppose an individual wouldn't know how the attorney general has exercised his discretion. What we would hope the individual would know is that he is bound to maintain his status throughout the entire period. Let me stop you right there because this is where I'm having some trouble. You used the word lawfully maintained. Yes. And so your position is once you get temporary status, you must lawfully maintain what would be fully, quote, admissible status, correct? That's the first words in Section 1160A, lawful residence. You'll see that that caption covers both subparts 1 and 2. Right. Okay. So you've now been admitted for lawful residence, temporary residence. Where is the language that you're relying on which says once admitted for lawful residence, you are required to be then lawfully admitted for permanent residence? In other words, how do you get from 1 to 2? Well, I will cite you to the statute and the regulations. In the statute, it's subpart 5 in general. Subpart 5? Yes. Subpart 5 in general, except as otherwise provided in this subsection, an alien who acquires. Sorry? I'm sorry. It's 1160. It's the last subsection. I apologize. It's the last subsection in A. A5. It's A5. An alien who acquires the status of an alien lawfully admitted for temporary residence under paragraph 1, such status not having changed. Okay. So let's stop right there because. But I also want to cite you to the regulations. Well, okay. So then just to make sure, I want to walk through the statutory construction. So then you say the status not having changed. That's the phrase you're relying on. Correct. That's the status. That's the temporary residence status. Okay. And did his temporary residence status change in this case? The point we're relying on is that, in fact, it did, but it need not have. Had the Attorney General exercised his termination authorities. No, no. Okay. So let's forget the Attorney General right now because he didn't do anything. So his status not having changed, was at any time was his status as a temporary resident withdrawn? No. Did any time his status as a temporary resident change? No. It did not, in fact, change. It did not, in fact, change. So if it did not, in fact, change, how then does subsection 5 support your argument that you must lawfully maintain? It supports the argument that an alien does not become vested with eligibility for the second adjustment at the time of the first adjustment. But if his status didn't change, how could you invoke 5? Now, it may or may be that you should. I'm just trying to understand your argument. We're relying on this provision and a provision of the regulations to support the argument that the admissibility must be maintained. Okay. It's not a window of admissibility. It must be maintained. So now let's, since the subsection 5, you've suggested that his status did not, in fact, change, then you must be relying on the regulation. And what regulation do you rely on that would support having to, as you put it, lawfully maintain? It's 8 CFR 210.5A, eligibility and date of adjustment to permanent resident status. The status of an alien lawfully admitted to the United States for temporary residence under section 210A1 of the Act, if the alien has otherwise maintained such status as required by the Act, shall be adjusted to that of an alien lawfully admitted. So now let's just go to that statute. Did he otherwise maintain the status of a temporary resident? No, because he committed an intervening crime for which the Attorney General could have denied his adjustment to permanent residence and could have. It seems to me that you're mixing and matching terms here, is my concern. What I'm saying is it doesn't matter whether the Attorney, under our argument, Your Honor, it doesn't matter whether the Attorney General actually exercises that authority. What matters is that it is available and that we offer this to support our position that it is the burden on the applicant to maintain his eligibility. But his status was as a temporary admittee. I mean, you're mixing up eligibility, admissibility, all of these concepts, and merging them into maintaining the status. I'm trying not to. I'm trying to have, respectfully, to have you focus not actually on the SAW statute because this isn't really a legalization case. You're arguing this on an adjustment. I'll address Judge Wardlaw's remand question in a minute. Well, if this were a different adjustment of status, 245 or something, it would be a different argument here. But this is the SAW statute. It's a peculiar statute because the adjustment to permanent LPR status can occur even if the person is out of the country. Every other time you have a hearing, you have applications, you have an application. Generally speaking, there are rulings. But this, Congress said, it automatically occurs. Well, to correct you, Your Honor, if I may, he has to be in the country for the second adjustment. He need not be in the country for the first adjustment. But nowhere in the SAW statute. Didn't the BIA say differently in Jimenez? No place in the SAW statute say that an applicant is immune or that the government waives the right to bring charges of deportation during the two-year period. No, it didn't. It should. It should. Perhaps it should. But it didn't. And if it doesn't, then it's automatic in that sense. That is to say, if it does not do so at the expiration of the period, he becomes an LPR, and you can still deport him, but now you're deporting an LPR. That's why I would ask you to focus on the difference between the deportation statute, 237, which creates the ground of deportation, demands an adjustment of status, but doesn't say what kind of adjustment of status it needs to be, and the SAW statute, which creates two adjustments. I've got a slightly different question, if I may. The BIA seems to me pretty clearly and consistently in unpublished opinions, but clearly and consistently did not adopt the position you are now urging. Is that correct? In cases in another context. But the company has another adjustment. Let me just read to you from one of the BIA rights. There is no statutory requirement that the resident establish her admissibility at the time of her adjustment to permanent resident status. Now, maybe these are unpublished, but I think we owe some deference to a long line of pretty consistent decisions. I think there are five of them. The only one of those decisions, Your Honor, which addressed 237A1A, the statute that requires an adjustment of status, is Flores-Munoz. But they all addressed the question at your recommendation, which is whether or not at the time he became a lawful permanent resident, admissibility was a relevant consideration. And they said it was not. So, in other words, your urge, you could separate them and you could say, well, it's all okay, because even if he's deportable under this provision, he's still a lawful permanent resident eligible for relief. But you seem to be saying, no, he isn't a lawful permanent resident, and if that's the position you're taking, all of these cases are relevant. Those cases, Your Honor, we believe are relevant because they addressed admissibility not in terms with the charge of deportation at issue in this case, with whether or not the individual – that's the Jimenez-Lopez case. The question was whether the individual was properly placed in exclusion proceedings or did he make an entry and should he have been placed in a different issue entirely. And you're saying he wasn't a lawful permanent resident because he didn't maintain his admissibility. So don't the two turn into the same thing? If that were true, Your Honor, then 237 would not have – A1a, as I mentioned, ties the grunt of deportation into adjustment of status. A2a and A2b and other provisions tie the crime into a relationship with admissibility. Now, if the two were the same, Congress wouldn't have had crime within a period of adjustment of status on one hand, crime within admissibility on the other. Clearly, there's a distinction for purposes of this statute. And that's why – Can you tell me what effect we give to unpublished BIA decisions? I'm sorry, Your Honor? What effect – what deference do we give to unpublished BIA decisions? Well, our position would be that in the case in which the BIA issued that decision, you should defer to it even if it's unpublished. But because they're unpublished, they're not precedential in other cases. Well, Jimenez is published, right? That is published, correct. That's the one you're relying on? No, we're saying it's essentially irrelevant. What about Flores-Munoz? Well, because then the BIA seems to say that they're going to change their mind in this case as a result of our decision in Perez. So don't we owe some kind of Chevron deference to the BIA on this one? Yes, Your Honor. We indicated in our supplemental brief, this obviously is not the most simple issue to address. And the fact is that the BIA has never, in a published decision, addressed the specific issue that this en banc court has to address. If we owe Chevron deference to the Attorney General, then why shouldn't we send this back to the BIA to clarify it in the first instance? That is an alternative that we suggested in our supplemental brief. And, Counsel, am I correct that this is a streamlined case where the BIA just affirmed without opinion the result of the IJ? That is this case. So we don't have any analysis of the BIA at all here? That's correct, Your Honor. But we have the IJ who cited Jimenez, which you now say is irrelevant. Well, the IJ relied on the case that you repudiated. I wish the IJ's case, frankly, Your Honor, were stronger. The IJ's decision were a bit stronger. But it's the only one we have. It's the only one you have. But the IJ cited, as I recall, cited Flores, excuse me, Jimenez-Lopez, for the proposition that the failure of the Attorney General to exercise his termination authority does not constitute a new determination of admissibility. That means additional charges of deportation can be brought. That's the proposition to which you cited. I feel I'm probably the only person here that's been in this from the start down. And I feel like I've been dragged behind a truck face down. I'm with you, Your Honor. No. I want to say that the government's position has been a moving target and hasn't been particularly A moving target. Yes. But, you know, I still look at this from the standpoint if I do statutory construction, I have difficulty finding that there was not an adjustment of status at the end. And if I do statutory construction as I always do it, you know, I have difficulty in veering from my initial position. But going back to the original argument, the government never talked about, you know, when the government talks about deference, the government didn't talk about the other positions of the BIA at that particular time. That wasn't really discussed by either side. Well, I think when we Well, I know. But then from the standpoint then, you know, we have that particular decision and you're asking, you know, in this case, initially asking for some deference, saying that's how the agency did it. But then as we find out now, you know, what do we give deference to? The government's position has been that the panel got it exactly right both times. Because this is an adjustment of status. This is an adjustment of status case. It's not an invisibility case. But you argued It turns an invisibility. That's the adjustment of status. The statute that you're relying on says that it's the time of adjustment of status whether he was inadmissible at that time. So it wraps the concept of invisibility into the time of adjustment of status. If we have here a time of adjustment of status at which invisibility is not relevant, and there are two possibilities, one when it is relevant at the temporary stage and one when it isn't relevant at the permanent stage. And it's only one because it says the adjustment of status. So if there's only one and we have a choice between the one at which invisibility is relevant and the one at which it isn't relevant, and the statute talks about invisibility, why would we choose the one at which invisibility is not relevant? I would benefit from the tape. I'm sorry. I'm sorry. I'm sorry. The statute says the time of adjustment of status. You're referring to 237. At the time of entry or adjustment of status.   I'm sorry. I'm sorry. I'm sorry. I'm sorry. The time. The time. Okay. So you have to choose. You have to choose between the time of temporary status and the time of permanent status. Correct. At the time of temporary status, invisibility is a relevant concept. The statute, the full statute says so. At the time of permanent status, there is no invisibility determination made. It's made at the time of temporary status. 1247 talks about inadmissibility. Why would we be choosing to apply a concept of inadmissibility at a time that's not relevant, instead of at the time that it is relevant? Because it's doing something, Your Honor, different than what the SAW statute attempts to do. It creates a ground of deportation. The SAW statute creates eligibility for adjustment of status for a special agricultural worker. It doesn't exempt an individual from having to comply with the grounds of deportability. It doesn't grant an immunity from grounds of deportability. This particular ground of deportability is inadmissibility. So in turn, it is connected to a concept of admissibility. Because at the time of adjustment to lawful permanent resident status, a disqualifying crime had been committed. I don't think you've answered Judge Bivey's question yet about the impact of Flores-Munoz. What should we do with Flores-Munoz? Well, you should defer to Flores-Munoz. But Flores-Munoz is an odd situation, I grant you, because while it is the only of the five or six unpublished cases that involved the grounds of deportation at issue in this case, the Board originally applied exactly the same analysis. In fact, it uses the same boilerplate language that it used in the prior cases that did not involve this ground of deportability. So I would one thing I would point out, and that's that Counsel, how can we possibly defer to Flores-Munoz when the Board tells us it's changing its mind in response to the panel's decision, which has now been vacated? I'll give you one reason. There are two other cases in which the original panel decision in this case basically coincided, and the agency could have also moved to reopen those cases. One is Rodriguez-Rodriguez, and the other is Herlandez-Marcia. But that just tells us the BIA has been all over the map. Well, I think it means something that the agency chose to reopen one case because it thought it involved the issue covered by the panel decision. I think the agency hasn't been dealing consistently on this question, doesn't it? Well, it has if what I'm saying is correct, that it moved to reopen Flores-Munoz because Flores-Munoz involved the issue present in this case, but it didn't move to reopen the other two cases because those other cases don't involve the issue present in this case. Counsel. I think that means something. Okay. Counsel, you represent the government from the Department of Justice? Yes, I do, Your Honor. Would your position as the representative of the government be assisted if this were remanded to the BIA? I'm sorry. Would we be resisting? Do you think that your position would be assisted in representing the government if this were remanded to the BIA? That position, we state that in our supplemental brief, the one responding to the February 16th order, understanding that we have attempted to advocate an interpretation, a statutory interpretation, but if you disagree, because, and I'm not going to tell you that not with a straight face, that these board decisions can be reconciled, and that might be one advantage to remanding to the board. It could not only address, which it hasn't in a published decision, the exact issue presented in this case, it might also reconcile the other unpublished decisions. Well, Jimenez is pretty close, isn't he? I'm sorry? Jimenez is pretty close on many of the issues involved here. I mean, Jimenez says that under this particular adjustment of status, it is determined on a fixed schedule without regard for the alien's admissibility at that time. Isn't that what it says? Which case? We're talking about Jimenez Lopez. Oh, I'm sorry. Yes. Right. So that's exactly what Judge Berzon has been asking about. Admissibility under this peculiar statute isn't taken into consideration at the time of adjustment of status. Because it's not considering whether there was an adjustment of status. It's concerning Jimenez Lopez was addressing whether or not there was an entry. But the sentence in the concept are that we are not taking admissibility into consideration at Stage 2. We're only taking it into consideration at Stage 1. And the magic words aren't really what's relevant. What's relevant is having some coherent sense of what the statute is doing. And that's what Jimenez Lopez tells us, what the statute is doing. So if we were concerned under 237A1A with what happened at the time of entry, because the statute looks at the time of entry or adjustment of status, we probably wouldn't be having this argument. But we're not, because Mr. Perez-Enriquez was specifically charged with having done something at the time of adjustment of status, not the time of entry. Okay. I think we're going back to where we were. So thank you. Your time has expired. Thank you very much. We do understand your position, Your Honor. Yes, Your Honor. If I can just make a couple quick points by way of reply. First of all, the question is a question about the significance of the A1A charge. I would just like to bring that back and try to explain that again, what's at stake. You know, the inadmissible at time of adjustment of status, a person can be inadmissible if the person committed fraud, as in the Monet case. But that also clearly, and we've cited in our most recent brief the matter of P, in which no fraud was involved at all, person is adjusting status, and was inadmissible at that time because of his sexual orientation. Inadmissible for the ground of exclusion was a person with a psychopathic personality. That was, there was no fraud at all involved in that admission, but later the board came back and said that person is deportable under A1A because he was inadmissible at the time of adjustment of status. And that's very important because under A1A, the effect of applying A1A to a person is to say that you got your status by mistake. And so as a matter of law, we're going to treat you as if you never lawfully got that status. Monet, let me just quote what the court says in Monet. It says a person who's deportable under A1A, I understand that was a fraud case, but generally a person who's deportable under A1A is a person who has not lawfully been accorded the privilege of residing permanently in the United States. And that's why Monet said, so therefore, because you never lawfully got your status, we're not treating you as a permanent resident. You're not eligible for 212C, the relief that's available for long-term permanent residents. That's really what's at stake with the A1A charge. As we saw with respect to the government counsel explaining why they changed from the original charge to A1A, that was done to make him to disqualify that person. I understand that that's what the government thinks. But that doesn't mean that that's what the statute says. The statute, he was lawfully granted permanent resident status because the Attorney General did not bar it as he could. He was lawfully granted it. And so even if he was guilty of – I mean, even if he does become subject to A1A, he was lawfully made a permanent resident. Yeah. I suppose – and my answer is in understanding that statutory term, we look not only at the specific language, which is maybe not entirely clear, but look at – a traditional tool of statutory interpretation is look at what the courts have – how the courts have interpreted that in the past. And in the past, the courts have done that. When you apply A1A – No, there's no case. Because if the person lawfully became a permanent resident, then he was not inadmissible at the time. I'm sorry? Right. He wouldn't – The person who lawfully became a permanent resident would not have been inadmissible at the time of the adjustment of status. Okay. I think that your time has expired. Thank you. Thank you. Thank you.   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Schroeder, Reinhardt, O'scannlain, Thomas, Silverman, McKeown, Wardlaw, W Fletcher, Fisher, Paez, Berzon, Tallman, Rawlinson, Bybee, Callahan